IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION

CONAX FLORIDA CORPORATION,
a Florida Corporation,

   Plaintiff,

v.            Case No. 06-9222 CI-8

ASTRIUM LIMITED, a Foreign Private
Limited Company,

   Defendant.
_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Conax Florida Corporation, by and through its undersigned counsel, sues Astrium Limited, a Foreign Private Limited Company and says:

### PARTIES

1. Plaintiff is a corporation organized and existing under the laws of Florida with its principal office in St. Petersburg, Florida and is in the business of manufacturing and selling equipment used in space satellite technology.

2. Defendant is a private limited company organized and existing under the laws of the United Kingdom with its principal office in the United Kingdom and is in the business of the manufacture and sale of aircraft, spacecraft and space satellite technology.

### JURISDICTION AND VENUE

3. Defendant is subject to the jurisdiction of this Court pursuant to Florida Statute § 48.193(1)(a) in that Defendant has conducted business in Florida by, *inter alia*,

  a. Initiating contact with Conax by sending to Conax in the State of Florida a Request for Proposal and subsequently an Authorization to Proceed of July 24, 2000 directing specific work to commence in Florida on Astrium's behalf.

b.  Sending representatives, including its Head of Propulsion Procurement, to Plaintiff's Florida headquarters in St. Petersburg on at least six occasions to negotiate various terms of the contract between Plaintiff and Defendant;

c.  Sending representatives to Plaintiff's Florida headquarters on multiple occasions to conduct technical reviews of Plaintiff's product in advance of the execution of the parties' contract;

d.  Collaborating with Plaintiff at Plaintiff's Florida headquarters to develop a product for Defendant's use in its satellites in advance of the execution of the parties' contract;

e.  Drafting and reviewing various terms of the contract in meetings conducted at Plaintiff's offices in Florida;

f.  Consenting to the manufacture and testing of Plaintiff's product in Florida;

g.  Having representatives on-site at Plaintiff's testing facilities in Florida during the testing and manufacture process;

h.  Injecting Plaintiff's product into the stream of foreign commerce to effectuate the business relationship with Plaintiff.

i.  In advance of the execution of the contract, Astrium initiated multiple meetings with Conax at Conax's headquarters in St. Petersburg, Florida in order to jointly engage in the design of pyrovalves that would be specifically suitable for Astrium's commercial needs. This collaborative effort included a joint effort to modify the design of the pyrovalve; modify the specifications of the pyrovalve including specifications for pressure requirements and leakage controls unique to Astrium's requirements; modify the product testing procedures; and other collaborative efforts that

amounted to a business venture conducted in the State of Florida.

4. This is an action for declaratory relief and is brought pursuant to chapter 86 of Florida Statutes. The amount in controversy and the value of the rights and obligations to be adjudicated herein exceeds $15,000.00 exclusive of interests and costs.

5. This cause of action accrued in Pinellas County, Florida.

## FACTUAL BACKGROUND

6. Following extensive negotiations, many of which occurred in Pinellas County, Florida, the parties in or about March, 2001, entered into a written contract for the furnishing by Plaintiff to Defendant of valves used in space satellites.

7. The contract by its terms was effective, retroactive from July 24, 2000, and was amended on three occasions, the most recent of which was effective from October 26, 2004.

8. The contract, together with all amendments is claimed by Defendant to constitute Defendant's proprietary information; it is represented by Defendant that:

> "This document (referring to the contract) is the property of Astrium S.A.S. and Astrium Limited ("Astrium"). It is supplied in confidence for the purpose of use for the procurement of equipment for Eurostar Satellites between Astrium and Conax and shall not be used for any other purpose other than that for which it is supplied and shall not in whole or in part, be reproduced, copied or communicated to any third party without prior written permission from Astrium."

9. Plaintiff in consultation with Defendant and as the interests of justice require, will take appropriate steps to maintain Defendant's claim to a proprietary and confidential interest in the contract and therefore is not filing at this time, a copy of the contract with this Complaint.

10. Defendant has in its possession a complete copy of the contract, together with all amendments.

3

## CLAIM FOR DECLARATORY RELIEF

11. The contract defines the rights and duties the parties including their rights and duties concerning warranties applicable to the valves.

12. Plaintiff furnished valves to Defendant pursuant to the contract commencing in 2000 and continued through the contract term and its amendments to furnish the valves in accord with the terms of the contract with on-site customer verification. However, in June 2005, certain of the valves exhibited signs of cracking upon destructive testing and were determined to be nonconforming to the requirements and specifications of the contract.

13. Plaintiff, by letter of July 29, 2005, addressed the nonconformance issues and proposed to replace the nonconforming valves. A copy of the July 29, 2005 letter together with a follow up letter of January 17, 2006 are attached as Exhibits A and B.

14. Agreement respecting replacement of the nonconforming valves was not reached however, and an actual controversy has arisen and now exists between the parties over the extent of Plaintiff's responsibilities to Defendant under the contract.

15. Plaintiff contends that its contractual responsibility to Defendant is limited, at its option, to the correction, repair or replacement of any nonconforming valves which Plaintiff has offered to do. Plaintiff further contends that if it is unable to correct, repair or replace the valves, its responsibility to Defendant is limited to repaying Defendant such part of the contract sum as has been paid to Plaintiff for the nonconforming valves.

16. Defendant on the other hand has threatened Plaintiff with a claim for damages which far exceeds the scope of Plaintiff's obligations, if any, to Defendant

under the contract as more fully set forth in the parties' correspondence of September 5, 2006 and September 12, 2006, copies of which are attached as Exhibits C and D.

17. Plaintiff is in doubt about its rights and obligations under the contract and seeks a judicial declaration that any obligations of Plaintiff with respect to any nonconforming valves for which Plaintiff is responsible, do not extend beyond the correction, repair or replacement of such nonconforming valves, or failing those corrections, repairs, or replacements by Plaintiff, beyond refunding to Defendant the payment received by Plaintiff for the nonconforming valves.

18. All conditions precedent to the commencement and maintenance of this action have been performed or have occurred.

WHEREFORE, Plaintiff requests that this Court issue a declaration of the rights and responsibilities of the parties under the contract with respect to the controversy existing between them and that Plaintiff be awarded its costs and such other further relief as is just in the premises.

Respectfully submitted,

*[signature]*

CHARLES M. HARRIS
Florida Bar No.967459
TRENAM, KEMKER, SCHARF, BARKIN,
  FRYE, O'NEILL & MULLIS, P.A.
Bank of America Tower
200 Central Avenue, Suite 1600
St Petersburg, FL 33701
Telephone:   (727) 896-7171
Facsimile:   (727) 820-0835
Attorneys for Conax Florida Corporation

**CONAX florida**

CONAX florida corporation
ISO 9001 REGISTERED
2801 75th Street North
St Petersburg, Florida 33710-2939
Telephone: 727-345-8000
Fax: 727-345-4217
www.conaxfl.com

29 July 2005

Mr. Michel Le Moine
Vice President and Chief Technical Officer
EADS Astrium SAS
31, rue des Cosmonautes
31402 Toulouse Cedex 4
France

Subject: Pyro Valve Issues

Dear Mr Le Moine,

After a thorough review of all data from the original test programs and recent tests and inspections, provided herein are Conax's recommendations in regards to flightworthiness of the valves supplied to date to EADS Astrium.

<u>1/4" and 3/8" Normally Closed Valves</u>
All of Conax's data indicate that all of the valves delivered to Astrium are flight worthy, based on the following:
1. LAT test units have not exhibited any cracking, worm burn holes, or black deposits
2. The worst case linear stress analyses conducted shows positive margins.
3. The design of these valves includes a positive stop in the Ram bore, which does not allow any over travel.

<u>1/4" Normally Open Valves</u>
Batch 1 – Conax does not have enough data to support using these valves, especially since the 100% and 120% booster LAT units cannot be located for additional analysis.

Batches 2 and 3 – Conax does not endorse the use of any of these valves, due to cracked valves discovered in these batches.

Batch 4 (Current Undelivered Batch) -

<u>Option 1</u>
Conax proposes that 40 units be built and 20 valves be test fired with SDI CC-176-01 boosters with a nominal output of 2100 psi. Your batch 1 100% LAT units were fired with SDI boosters which had 3100 psi output (150% of the output power of these boosters) and they did not exhibit any problems. If any valves fail, the remaining valves will be scrapped. No testing can be performed with 120% boosters due to their unavailability and 6 month minimum lead time. Conax would require that initiators be purchased from the Astrium lot pending delivery to support the testing.

*A Cobham plc company*

**Exhibit A**

Option 2
Conax manufactures the previous OEA stainless steel valve design with Titanium transition tubes. We estimate expedited delivery could be 6 months.

Option 3
Conax redesigns and qualifies the 1/4" Normally Open Titanium Valve or a Stainless Steel valve with transition tubes. We estimate expedited delivery could be 12-14 months using either material.

**3/8" Normally Open Valves:**
Conax does not endorse the use of any batch 1, 2, or 3 valves. Conax expected the booster test data to reflect what was shown for the 1/4" NO valves which was that the SDI data was much lower than the Pac-Sci data. The data did not support this theory

Option 1
Conax to supply two in stock 1801-102-01 3/8" Normally Open titanium valves from an approved lot for a near term solution. In addition, materials are in inventory to assemble two additional valves.

Option 2
Conax to supply 1801-099 Stainless Steel 3/8" NO Valves. 12 ea. are in stock and parts are available to assemble 3 additional valves. Transition tube lead time is 6 to 8 weeks.

Option 3
Conax manufactures previous OEA titanium valve design. We estimate expedited delivery could be 12 months, due to the requirement for a booster in the OEA 3/8" valves.

Option 4
Conax redesigns and qualifies the 3/8" Normally Open Titanium Valve or a Stainless Steel valve with transition tubes. We estimate expedited delivery could be 12-14 months using either material

We are disappointed that we are not able to present you with more positive conclusions or options. Conax is fully aware of the impact this situation has caused to the EADS Astrium Satellite business. This situation has also caused a significant impact to Conax's business.

While we feel that we are doing everything possible to resolve the situation, we cannot support the continued requests for significant analyses of what we believe are symptoms of the root cause. All data to this point suggests that when the booster is over powered, the Ram/Cutter over strokes causing significant stress at the weld interface leading to cracking. We have also concluded that the commercially pure titanium shear tubes used in these valves are more likely to crack than any other material.

In the final analysis, the only risk free solution is to redesign both the 1/4" and 3/8" normally open valves. Please provide direction on how you would like us to proceed.

Sincerely,

Al Guenthardt
President and CEO
Conax Florida Corporation

cc: J Kovacik, D. Frederick, T. Yandle, J. Bugara

**CONAX florida**

CONAX florida corporation
ISO 9001 REGISTERED
2801 75th Street North
St. Petersburg, Florida 33710-2939
Telephone: 727-345-8000
Fax: 727-345-4217
www.conaxfl.com

17 January 2006

Mr. Klauss Peter Hillerich, SVP Supply Management
EADS Astrium GmbH
Ludwig-Bolkow-Allee
85521 Ottobrunn
Deutschland/Germany

Subject: Batch One and Two 3/8" Normally Closed Pyrovalves Cleared for Flight

Dear Mr. Hillerich,

A review meeting was held at Conax Florida Corporation on 5 January 2006 covering the flight acceptability of the three batches of 3/8" normally closed pyrovalves supplied to EADS Astrium.

Following a thorough review of all supporting data by representatives of Conax Florida Corporation, the Aerospace Corporation, and EADS Astrium, the flightworthiness of all batch one and two normally closed valves has been confirmed. Batch three valves are subject to an additional data review by the Aerospace Corporation and a statement with regards to their flightworthiness will be provided at a later date.

Conax continues to work diligently toward resolving the pyrovalve technical issues and earnestly awaits a response to the recovery solutions previously presented.

Sincerely,

Al Guenthardt
President and CEO
Conax Florida Corporation

*A Cobham plc company*

**Exhibit B**

**CONAX florida**

CONAX florida corporation
ISO 9001 REGISTERED
2801 75th Street North
St. Petersburg, Florida 33710-2939
Telephone: 727-345-8000
Fax: 727-345-4217
World Wide Web http://www.conaxfl.com

September 12, 2006

<u>Via Facsimile & U. S. Mail</u>

Mr. Francesco Giobbe
VP Legal, General Counsel
Astrium Satellites
31 rue des Cosmonautes
31402 Toulouse Cedex 4 France

Re: Failed Conax Pyrovalves
    Astrium Letter Dated September 05, 2006

Dear Mr. Giobbe:

As we discussed in person in Virginia, Conax and Astrium apparently disagree on the proper interpretation of our contract. Until such differences are resolved, we respectfully believe that it is inappropriate to offer our pyrovalves for sale to Astrium. Therefore, retraction of our outstanding proposal seemed to be a natural step in the process.

Conax is very interested in addressing our contractual differences with Astrium. In our meeting, we discussed defining our future business relationship as well as all contractual terms and conditions. Again, I request Astrium to identify their pyrovalve requirements; specifically any qualification requirements necessary to allow Conax to remain a viable source for these products. Please forward this information for our review at your earliest convenience.

This step will allow Conax to evaluate whether our pyrovalves can meet all of Astrium's technical requirements and allow us to develop a recovery schedule. This will also allow Conax to establish the cost of qualifying new pyrovalves. This cost is the cornerstone in quantifying our position on Astrium's claim. In addition, we must have a mutual agreement of all contractual terms and conditions before we will pursue this effort.

I look forward to hearing from you.

Best Regards,

Al Guenthardt
President/CEO

**Exhibit D**

**COBHAM**